Well, your argument next, in Case 21-1454, the Ohio Adjutant Gen.'s Dept. v. the Federal Labor Relations Authority. Mr. Flowers. Thank you, Mr. Chief Justice, and may it please the Court. The Sixth Circuit and the Federal Labor Relations Authority held that Adjutants General and State Guards, when they employ technicians, are federal agencies to which the authority may issue orders. That is wrong. The Reform Act defines agencies to include Executive Departments, Government Corporations, and Independent Establishments. Adjutants General and State Guards are none of these things. They're neither among nor part of the 15 Cabinet-level agencies that qualify as Executive Departments. They're not Government Corporations because they're not Corporations, and they're not Independent Establishments because they're not part of the Executive Branch. The authority concedes all of that, but it claims it can regulate Adjutants General and State Guards anyway because they represent or act on behalf of the Defense Department, which is a Reform Act agency, when they employ technicians. But the Reform Act says that the authority can issue orders to agencies. It gives it no power to issue orders to non-agencies simply because they serve as the representatives or agents or designees of an agency. Indeed, a serious sign of the problem with the authority's position is that even now, 40 years after the Reform Act was enacted, no one can quite give a consensus justification for the power the authority wields. The authority's arguments have continued to evolve, while the union and amici advance novel arguments of their own. If Congress had really given the authority this power, if it had really wanted a federal independent agency with jurisdiction over federal labor relations to issue orders to State Guards, it would not have made the grant of that power so hard to find. Ultimately, here, there's no reason to resist the statute's plain meaning. Dual-status technicians are employees of the Defense Department, and they should enforce their labor rights through and against that department. I welcome your questions. Mr. Flowers, who hires these technicians? They are hired by the Adjutant General. They become employees of the Defense Department under 32 U.S.C. 709. So under what authority does the Adjutant General hire the technicians? Federal law empowers us to hire technicians. So it's done through delegation? Yes. So they are federal employees? They are federal employees, and let me try to explain why, because of that, it makes the most practical sense to route these disputes through the Defense Department. But is it the complaint, you have the style of the, at least in the petition, it says that before the Federal Labor Relations Authority, U.S. Department of Defense, Ohio National Guard is the style. That is how the case was captioned, but it was always treated as a suit against the State Guard, not as against the Department of Defense. But I thought the Adjutant General was an intervener, a respondent. The Adjutant General intervened to defend the interest of the State National Guard, which was the initial party. So this would make, your argument would make much more sense if we were talking about the State Highway Patrol. Could you explain exactly when a technician is a federal employee, and for what purposes, and when a technician is a state employee? So they are always a federal employee under 32 U.S.C. 709E, and we're not disputing that they have collective bargaining rights or that we are using these federal employees. The question here is whether we are ourselves a federal agency, because they can issue an order to us only if we are in fact an agency. That's what the statute says. And we are not a federal agency, even if we are an agent or a designee of the federal government, because being someone's agent does not turn you into the principal. It just means you're acting on behalf of the principal. I do wonder if I can briefly address... Could I just add a point of clarification? You just said something that also appears in your briefs that I was confused by.  You said that you're not disputing that these employees have collective bargaining rights. But what does that mean to you? Because the idea of collective bargaining rights is that there's somebody else on the other side that has to sit down and collectively bargain with you. So are you saying that, in fact, there is an obligation on the part of the state guard to sit down at a collective bargaining table? It should be their employer, which is the Department of Defense, who could ask us to serve as the representative. It might be bound by what we enter into, but it would be forced through and against them. Let me explain how that makes sense. If you step back and you ask, who's best positioned to handle all this, the authority in the first instance or the department? The department on the front end is the only entity that can bring all the interests to the table. So when they're negotiating or trying to amicably work out a dispute, they, unlike the authority, are subject to presidential control. And so they can ensure that the president's commander-in-chief powers aren't frustrated. They have immense influence over the guards and the adjutants general. But most important of all, the technicians are Defense Department employees. The Defense Department signs their checks. The Defense Department withholds their dues. The Defense Department issues myriad regulations that govern the sort of conduct technicians can engage in. That's all stuff with respect to which they may wish to collectively bargain, but the Defense Department's in charge of. On the back end, when the authority actually issues the order, generally speaking, it's not possible to, or I should say, in some cases it won't be possible to redress their injuries without the department's cooperation. In this very case, we were ordered to restore the union to dues withholding status. I think you said that the department should be involved, but hasn't Congress, in essence, resolved this by saying that the secretary shall designate the adjutant general referred to to employ and administer the technicians? In other words, that's Congress speaking to resolve the issue and say they're the ones who are going to act on behalf of the department. There are federal employees, you acknowledge, and a federal agency, you acknowledge. The Defense Department is, yes. And the Department of Air Force. Which has collective bargaining rights, you acknowledge. And they have collective bargaining rights, and you said DOD should be handling this, but Congress has spoken to this and said DOD handles this through this process, which is set out in statute, in which, by the way, has been used from 1971 to 2016 uninterrupted without any objection, I guess, by Ohio. So let me take that in a few steps. The Defense Department has certainly said that we employ them, though they're also employed by the Department of Defense at the same time. If the idea is that we're acting on behalf of the Defense Department, that would mean that we collectively bargain on behalf of the Defense Department and the Defense Department should be standing here rather than the Ohio agent in general. That's who their dispute should be against. Again, on the back... But you hire and fire and supervise them. I mean, I guess what concerns me a little bit is the suggestion that, you know, while there might be practical reasons why the statute could have DOD be the operable agent here, it's not up to us, right? We're not just in the first instance making policy determinations about how this thing should be structured. And as Justice Kavanaugh just pointed out, we have a statute that gives these people, the dual-service technicians, collective bargaining rights, that in the collective bargaining world, as Justice Kagan points out, it means the right to sit across the table from the people who hire and fire you and bargain over the terms and conditions of your employment. So I guess your task, in my view, is to establish why it is that Congress would have intended to carve you out in this situation. So let me first back up for a second and explain. It's important to emphasize the law we're interpreting here, the Reform Act, is not about National Guards and technicians. It's a generally applicable law for the federal government. The law we're interpreting is the SSLMRS, right? That's the Reform Act. Those statutes are generally applicable. They apply to the whole federal government. And the word in question is agency. So the authority has jurisdiction over us only if we are an agency. But DOD is an agency, correct? DOD is an agency, so they can issue orders to the Department of Defense. And DOD, per the statute that Justice Kavanaugh points out, has delegated to your entities the authority to hire, fire, and act in that capacity over this group of people who have federal collective bargaining rights, correct? Congress has given us that power, though the Defense Department, who shouldn't minimize it, has immense control over it. Understood, but it's not even a DOD choice. I mean, it's an obligation on DOD to authorize you to be the supervisor of these employees. Those are not a choice on DOD's part. DOD had to give this authority to you. No, that's certainly true, but it doesn't mean that we are the Department of Defense. It means we're acting on their behalf. So the Department of Defense may well be bound by the contracts we enter into. We don't take issue with that. The authority can issue orders to the Department of Defense. And, in fact, it needs to for some of these things to bear out. So this is a technicality, then, to Justice Kagan's point. You're just saying, you know, they sued the wrong person. It should be DOD here. And you concede that DOD could order you to go to the collective bargaining table or order you to comply with an order issued by the authority. I don't think they could order us to. They could wield their influence over us. Why can't they order you to if you're their agent or representative? So they could take away the technicians. They could reduce our funding. But they couldn't, for example, replace the adjutant general. They couldn't create a new state national guard. So you're not really their agent or representative in the way that we might otherwise understand principal agency relations. It's not set up by a contract with those sorts of relationships. The Department of Defense is also an agency with limited power granted by Congress, and they have to act using the power they have, which is influence rather than control. And the reason that matters, why is it not a technicality? First, the federal government would be handling these things rather than us, and they're better positioned to do so. So I don't know if I mentioned this. Oh, I'm sorry. You're saying you want to change the law so that you don't collectively bargain, DOD collectively bargains. Well, DOD may be able to, through regulation, say if you want the technicians, you have to collectively bargain with them for us. But what they can't do is change the meaning of agency for the Reform Act, the generally applicable statute to make a state entity into a federal agency. So what do we do with the savings clause? The savings clause says that they don't want to save anything that happens under the executive orders. It says you can't change, we're not changing any policies, regulations, or practices, or decisions that were issued under those executive orders. And one of those decisions, very explicitly, was the Thompson Field decision involving the Minnesota Mississippi National Guard. And there the court said, not the court, the agency said very clearly, rejected these very same arguments you're making and said, you can go into the administrative process with the National Guard, and they're bound by those decisions. So two answers. So how does the savings clause just defeat all your arguments? Because it doesn't do the work they would like it to do. What it says, what that statute did, and what courts have recognized for decades, is it kept the slate from being wiped clean while the authority in the courts interpreted the Reform Act. So if something that those regulations- No, that was interpreting what agency and what was a component of DOD was. I disagree. It was saying that, I don't see how you could read it otherwise, that you are acting as an agent of DOD, and so you are a component of DOD. That's what one of the amicus argues, and I want to find out from the Solicitor General's office why they don't think that argument is compelling. So I don't think that argument works. Because being an agent does not make one a component of the principle. It makes them an agent of the principle. Usually it is a non-component that serves as the agent in all sorts of other contexts. But back to 7135. What it says is that those regulations, decisions, et cetera, continue to apply unless they're superseded by the Reform Act itself, which here this is because- But the Reform Act had the same definition of an agency and executive department as it did then. So it wasn't changing anything. It's just that none of those decisions ever interpreted. But beyond that, or a decision issued under the Reform Act, which could be a decision from the authority or the courts, so the courts are not bound to continue to adhere to those regulations. If you look at INS v. FLRA, that's 855 F. 2nd, 1454. It's a Ninth Circuit case from three decades ago recognizing that. So 7135 does not do the work they would like it to do. Ultimately, I understand this is a strange arrangement, but what they have to show is that the state entity is a federal agency for purposes of the Reform Act. Why do they have to show that? I mean, do you concede that our task is to ascertain the will of Congress with respect to what entities it intended to be covered by the Reform Act? No, I would not concede that. I would say the task is to determine what the word agency means in the Reform Act. Only insofar as Congress used that term, and so we're trying to figure out what Congress meant when it said agencies in the context of- I think we're not asking about their subjective intent. We're asking about the objective meaning. No, I'm asking objective. I'm saying surely, surely you're not saying that we can just decide whatever we want about this policy without reference to what Congress intended. As long as congressional intent is interpreted with respect to the statute. All right, let me give you the statute. The statute uses agency, and that does reference or refer to the generic term of agency in, you know, the listed enumerated departments. But I guess what I don't understand is why we have to automatically believe that when Congress included agency in the Reform Act, they were necessarily only incorporating those listed entities as opposed to talking about an agency insofar as it employs, hires, fires, and supervises federal employees. So it uses the term agency, and I get that. And we have another section that says these are the agencies. DOD is on that list. And to the extent that any of those agencies are entities that are hiring, firing, and employing federal employees, we think that that's really what Congress was caring about for the Reform Act purpose, for the collective bargaining purpose. So I guess my question is, why wouldn't any entity that is under the purview of a listed agency that hires, fires, and employs, functions like the agency for the purpose of employment, be covered by the Act? And alternatively, why would Congress intend to carve you out when you are functioning in that world? So I'll take them in reverse order. Why would they want to function as that, carve us out, I think, is because it does make more practical sense to route these things through the defense. But they don't say that. But what they do... Can we expect to see that in the statutes? They've excluded other things specifically as agencies. So if you're right and that was their intent, we would see the words, but not Adjutant General or, you know, National Guard in this statute, especially in light of the history that Justice Sotomayor points out. So I think an agency has to justify its power. They have to point to the statutory clause that gives them power. Otherwise, they don't have any. So the presumption starts they don't have it until they identify it.  And the agency is DOD, and everybody agrees they have this power over you all in the sense that you are organizing and hiring and firing. And there is no other context that we have found in which the FLRA interprets entities that act as the agent or designee for any of those departments to be agencies themselves. If they hire a private contractor and task them with doing something that they otherwise would have exclusive power to do, they don't count this court in Maryland, the United States, held that state militias are not... We're not looking for agencies in general. We don't care if you're an agency for other purposes. The only thing it seems as though the statute cares about is whether there's an entity that is hiring, firing, and supervising these employees because the statute is about their collective bargaining rights. Well, respectfully, I don't know how we get to that interpretation. The definitions we point to are for purposes of Title V. The Reform Act is in Title V, and we don't come within any of those definitions. And that's why you see the amici and the authority insisting that there must be some way to get there. It must be justified somehow, but no one can settle on... Well, we try to make sense of statutes as a whole. And this statute gives collective bargaining rights to these employees, and you acknowledge that. And this statute also says that with respect to these employees, and this is a kind of sui generis situation, the federal government is not acting as their employer. Instead, the federal government, per the statute, has the individual state guards acting as their employers, supervising them, hiring, firing them, and so forth. So then the question becomes, so who's supposed to be sitting across the collective bargaining table with them? Because we know that there's supposed to be a collective bargaining table, and we know that somebody has to be sitting on the other end. And we know that the statute doesn't really make sense for DOD to be sitting on the other end, because Congress has told DOD, you can't be the employer. You have to make the state guard the employer. So you put that all together, it should be the state guard that's sitting across the table, per what Congress said. So let me try to push back on that. It does make more sense for the Defense Department to be there. For one thing, they control many issues. I'm not saying it makes sense. It's like Congress has told you who it wants to be sitting across the collective bargaining table. And the way Congress has said that is Congress has said to DOD, you have to give over your supervisory and employment authority to the state guards. I think the premise is wrong. We manage their day-to-day activities, yes, but the Department of Defense issues regulations that control most aspects of their work, even the hours. So the Department of Defense is in charge of many of the things they do. I don't want to sit down before I say this. The Department of Defense is the one that withholds the dues. So, for example, here we were ordered to withhold dues. We cannot do that. What you're basically saying to us, your position when you get right down to it, is the suit was against the wrong people because everybody has always understood who the collective bargaining agent is in the wrong way. And from now on, collective bargaining, as to these employees, has to be done on a nationwide basis by the Department of Defense, as opposed to state-by-state by the individual guards and adjutants general. I don't believe that's... Isn't that? No. You said yourself you need a collective bargaining partner. You're saying that partner needs to be DOD, so DOD does that on a nationwide basis as opposed to the state guards doing it state-by-state, as has been done for decades. Actually, it's the last part I disagree with. Even if the Defense Department's the relevant entity, the FLRA can still certify regional units to do the negotiation on a region-by-region basis. And, again, they control many of the aspects over which disputes might arise and which they may well wish to collectively bargain. So it does make more sense that they collectively bargain with the entities that the law says are their employers. It does seem to me odd, and I understand that this is... State and national guards are unusual entities in that they have status under state authority and, of course, under some circumstances under federal. But how does it actually work? In other words, you recognize that you're bound by the results of the collective bargaining between the... that the dual technicians are permitted to engage in, right? And you... I mean, who negotiates that? You want it to be the Department of Defense, right? And I think they would involve all the relevant actors, but yes, ultimately. Yeah, but they're not the ones that do the supervising or day-to-day management of the dual technicians' responsibilities, right? They do set regulations that basically control the way we can supervise them on a day-to-day basis. So we do it, but subject to myriad regulations that govern all sorts of aspects of their work, including their hours, I should add. Well, but it does seem odd to have one entity doing the negotiation and another entity doing the supervision. But respectfully, I think it's not as odd as reading agency, the word agency, in a generally applicable federal law that's about the federal government to include entities that exist solely as a matter of state law. No, I understand... Keep going. I was going to say, I understand your legal argument, but I'm trying to see whether or not it makes sense, may have a lot to do about how it operates on the ground. And I think it does make sense because the Department of Defense, once they're there, can, A, bring that military expertise to bear. So, frankly, in terms of why we care about this, why it's not a mere practicality, we have much greater trust in the Department of Defense to work these disputes out before they even become disputes without compromising our military interests far more than an independent federal agency that's concerned with labor law. And they have the tools to do all that because they have immense control over the technicians, they have immense influence over us, and, unlike the authority, they're subordinate to the president. You hire the technicians, correct? We do. And you do, I think you said, day-to-day supervision of them, correct? That's true. And the oddity of the case is that you're not a federal officer, yet federal law requires you to do that, and you do it. And I think that's dispositive. And you're not challenging the constitutionality of that, just correct? Well, we, no, not... Of that specific role. But I think... Then to go back to the point about the word agency, you agree that DOD, as well as the Department of Air Force and Army, are agencies, correct?  Okay. And then the statute says, in this unusual context, DOD is acting through the state guard to, as you just said, hire, supervise the people, and that's the natural... If we have to make sense of this, that's the natural person, then, who would be sitting across from you at the collective bargaining table, the person... That might have been a better way to write the statute, but I see no way to get from the fact that we're their agent to the conclusion that we are the Department of Defense. That's not usually how it... Acting on behalf of the Department of Defense as assigned by Congress. Which would mean that they are bound by the agreement, not us. Right. And then one other kind of different angle on the history of this. Am I... Correct me if I'm wrong, and this is... Ultimately, you're going to say the tax controls, and I agree, but I just still want to know the history. Which was in the 70s, this was an issue, and state guards were objecting to their role on this and tried to get a carve-out in Congress, and that came up in the context of the military union, the separate legislation, and it was in the Senate bill, but failed in the House bill, and it never made it. The carve-out that would have changed the statute and solved your concern never made it. Well, that solution would have been to a slightly different problem, which is they wouldn't have bargaining rights at all. Mm-hmm. So, again, we're not disputing that they have rights. Right, that would have solved your problem. Yes, if they didn't have rights at all, then they could not go to the authority to enforce those rights. That's true. But ultimately... I agree with the tax controls, but that history illuminates this is not some isolated thing that was inadvertent, I don't think, or at least that Congress didn't pay attention to at some point. I fully grant that, but when we're talking about an agency's exercise of power, they've got to ground it in the text, as you recognize, and I think here we're talking about Penumbra, it's not the text. So what the feds are doing now is it's a fair victory because they kept collective bargaining rights, they could have it against the Department of the Army, but they can't enforce it against anybody. Not Pyrrhic in any way. They can enforce it against the Department of Defense. Well, but you're telling me the Department of Defense can't sue you for it. That's how you answered Justice Barrett. They cannot sue us. They can just use other pressures, but they can't have any enforceable right against you in court. Right. So, of course, my first answer is, we're stuck with the law Congress passed, whether or not it makes sense, but I think that does make sense. Oh, I agree with you. We're stuck. You and we are stuck. Yeah. And so I go back to my original question. However else they viewed the word agency or department anywhere else in any other part of the law, at least with respect to this issue, they had the Mississippi decision. And that decision, basically the Thompson decision, basically said, you negotiate the collective bargaining unit. You're acting on behalf of the department when you do it. The terms are approved by the department, so the department has said to you, these terms are okay. And if you breach the agreement, then you have to suffer the decision of the agency in charge of deciding whether there was a breach or not. That's as simple as I see this.  But then 7135 says, if that ruling is superseded by the act, which this is because... But the act didn't change the definitions. It didn't change the definitions, but that decision didn't consider the definitions. So it didn't change the interpretation of those definitions. That I disagree with. The relevant definitions predate that order. The order never considered the definitions. And in any event, whatever that assistant secretary of labor thought he was doing, the statute here plainly says agency, and even the government doesn't argue that way. So if you're willing to say there's no legal remedy, there's a political pressure remedy, but there's no legal remedy for rights that were clearly granted by Congress and intended by Congress. I really dispute that there's no legal remedy because a remedy against the department is going to be effective. They have immense influence over us. Yes, but it's going to be different. I mean, I appreciate that you keep coming back to the textual, it says agency, but I would posit that the real question is what did Congress intend when it used agency in the statute in that way? Well, we know what they... And to follow your line of reasoning, we would have to believe that Congress intended for dual status service workers in this nature to have a different, weaker form of collective bargaining rights because unlike other federal civilian employees who could sue the people who, excuse me, who could bargain with the people who supervised them, they couldn't directly. They would have to go through. I understand it's possible to figure out a way for them to enforce their rights, but why would Congress, given all this history, the background of the statute, the fact that they considered it, why would they have wanted dual service status workers to have a different kind of collective bargaining right than other similarly situated employees? You may answer briefly, yes. So two quick answers. First, again, they have to say we're the agency. I want to emphasize even the authority does not claim that we are an agency. They are not making that argument. They say we're the representative of, not that we are. Second, why would they want to do it? I think it's important to realize that these technicians serve, even in their civilian capacity, it's very important military tasks. And it's perfectly reasonable for Congress to say in that context, we want the defense department involved because they answer to the president and they have to make sure that whatever's being done doesn't frustrate his commander in chief powers. And think of, in this case, the general counsel wanted us to go base to base and engage in basically a speaking tour where we would apologize to the technicians and tell them we had violated our rights. But haven't you... Thank you, counsel. Justice Thomas? Just briefly, could, in your delegation of authority, could it explicitly authorize you to not only administer but also to serve as the, well, it would be more of an imposition, that you are also the defendant in these cases or respondent in these cases? Congress could do that and it's actually done it in other contexts, not with respect to the Reform Act. And I do want to note that... No, no, I'm talking about the defense department in its delegation to you. So the statute delegates to us the power to hire them. I do believe the defense department, through regulations, could say, if you want technicians, you have to agree to collectively bargain on our behalf. I don't think they could give the authority of the power to issue orders to us, but they could make us bargain for them. And I do want to briefly emphasize, 709E, the designation statute, is not about the Reform Act. That is a general statute that says we have power over technicians. So that's not unique to the Reform Act in any way. Justice Alito? Justice O'Meara? I'm going back to Justice Kagan's venerable rule, if it ain't broke, don't fix it. And we know that it hasn't been broken because either under the executive orders for decades, National Guards did go through the administrative processes as the named responding party. They've been doing so in this context. But I think most importantly, under Article I, military matters are left to the executive. And we should be doing very little to interfere in that process. And this is a major interference in you saying to us, we are not, we can be designated as the employer, we can have adjunct generals hoisted on us, we can be given permission, as we have been, to bargain, but we can't be forced to honor our bargains. That's basically what you're saying. We can't be legally forced. That's what you're saying. It's not that we can't be, it's that Congress hasn't done it. And so if it ain't broke, don't fix it. I don't know if Congress hasn't fixed it. Congress has looked at this state of affairs for I don't know how long, and even when the National Guards asked Congress not to let the technicians collectively bargain, Congress rejected that request. And now you're asking us to permit labor bargains to threaten national security because there's no peaceful way to adjudicate this before an agency. I think the principle that Congress is in charge is absolutely right, but here there is no way, I think even the authority would concede, to read agency to mean us. They have to have this roundabout that's good for one ride and one ride only when we get to Adjutants General. In terms of that longstanding practice, and why is it broken or not, it is broken. Any time you have an agency... It's only broken because you're the first National Guard to say we won't honor our commitments. Any time you have an agency exercising authority that Congress hasn't given it, there's a serious problem. Agencies do not acquire power by adverse possession. It would be highly dangerous to say that as long as an agency keeps violating the law, we'll let it slide. If they do it once or twice, that's not okay. Here we're in the position where they've been violating it repeatedly, and this Court has not been shy in other cases, whether it's McGirt or Janus, to correct past practices that have been going on a long time, but that are contrary to law. Justice Kagan? It's of course true that many, many times in the law we ascribe the actions of principles to agents, and conversely, we require the same things of agents that we do of principles. So that's true in many contexts, where we essentially say we're going to treat the agent and the principle as one, because the agent is just exercising the authority of and acting on behalf of the principle. And the way I see this case is, is this one of those contexts? And can we understand the reference to agency with respect to this issue as also a reference to the agency's agents, who in this case are you and your fellow adjutant generals? And there I do, you know, trying to make sense of an entire statute, I think about the fact that there is an explicit delegation from the explicit delegation that Congress wrote requiring DOD to give its power to you with respect to these employees, and there is also an explicit provision, which you acknowledge, saying that these employees have employment rights, including the right to sit down and collectively bargain with their employer. And the question is, who is that employer? And you say they have to sit down with DOD. The consequence of your position is that the employee, is that the adjutant generals are out of the picture and DOD takes over. But I guess I'm wondering why, given that there's been this explicit delegation for you to supervise and hire and so forth these employees, why anybody would read the statute to do that rather than simply to read the statute as putting you in the shoes of DOD when it comes to this activity? So there are certainly instances where an agent's bound by whatever order is issued to the principal, but that's expressly. So, for example, Rule 65 expressly says agents are bound. I am not aware of any area in the law where agents, by serving as agents, become principals, and that's what they would need to show. The authority has to show that to win this case, because unless we are the Department of Defense, they can't issue the order against us. They do not even argue that we're the Department of Defense, and if the argument here is that we become agencies by serving as representatives, that is yet a new version of the argument, which just shows, I think, that we're looking for some way to say it must be in there somewhere when it's not naturally there. So then I get to why does it make sense to do it this way. I do want to emphasize this. Many of the things that the technicians will want to bargain over are wholly within the Department of Defense's control. They withhold the dues. So the order here said we have to withhold dues. We cannot do that. We don't issue the checks. We can ask them to do it, but we can't do it ourselves. They issue regulations that control all aspects of their work. If they want to bargain over that, nothing the State Guard can do. And finally, I think it's really critical to emphasize the importance of the president's control over the Department of Defense. The general counsel of the FLRA in this case, as I started to mention, wanted us to go base to base and get up and explain that we erred, we misinterpreted the act, and apologize. I think the Department of Defense would have been far more likely to say absolutely no way, that would be detrimental to the chain of command. Here, thankfully, the ALJ didn't impose that, but the general counsel asked for it. And I think that shows that the failure to appreciate the sort of military-specific concerns there shows why it does make practical sense to channel these things before the Defense Department. Mr. Gorsuch? Mr. Stabenow? Two quick things. One, the collective bargaining agreement here is approved by DOD, correct? Right. And again, we don't dispute that they could be held down by it. Right, and the statute requires that these collective bargaining agreements be approved by DOD, is that correct? I think that's actually somewhat ambiguous. The head of the agency has to approve it, so they consider themselves the head of the agency, which I assume to be the Department of the Army or Air Force, which is yet another reason why I think it's... But DOD, in this case, did approve... Did approve, yes. ...the relevant collective bargaining agreement, and there is a statute. I take your point on that. And then second question was, on your point about agencies can't acquire authority by adverse possession, if you go back to the 70s, I mean, I agree with that point, obviously, but if you go back to the 70s and the Thompson Field decision, even if you think that's wrong, what do you do with the unusual savings clause? I know you've referenced it before, but that itself is an unusual provision to say, well, to the extent agencies have done something, we, Congress, are preserving that unless superseded by a further regulation or by the president, et cetera, or by provisions of this chapter. In other words... Or a decision issued under this chapter, which would include a judicial decision. So if this court interprets the Reform Act in a way that is inconsistent with the regulations, the law Congress passed wins. And that's what the... Again, I pointed to that INSV FLRA case. That's how Judge Wallace, in a very thorough opinion... Yeah, I'm not... Okay, that's an interesting point. Not sure I'm fully sure of that, but I'll let it go for now. Okay. Justice Barrett? On page 28 of your opening brief and page 9 of your reply, you point out there are other contexts in which states designate officials to administer federal law. You point to Medicaid. You point to elections officials. And I want to know if you are just invoking those as examples for why it would be odd to consider the adjutant general to be an agent or a federal officer or subcomponent, or are you saying that there would be implications of our decision that might pull some of these people who Congress did not intend to be included in the act? You know, are there other provisions of federal law that ruling against you might mess up? I just wasn't really clear whether you were making an argument about this could really have bad consequences or if you were just saying this is an example for why the government's position doesn't make sense. More why it doesn't make sense. What we use those statutes for is to show that even when you're designated to fulfill a role for the federal government that's completely within the federal government's control and discretion, you don't become the federal government itself. As in those contexts, we do point to the Intergovernmental Personnel Act where the federal government actually does have its employees go work for tribes, local governments, and so on. Where, as far as we can tell, they would never say the tribes become entities of the federal government. Justice Jackson? Yeah, in response to Justice Kagan, and again in response to Justice Barrett, you keep saying we aren't DOD, and I guess I don't understand that. Why aren't you, for the purpose of employing, for the purpose of this particular statute, isn't that the work of the agency analysis such that the best reading of the statutory terms is that you are acting as DOD for the purpose of the statute and are therefore covered by the laws that govern labor relations in regard to these employees given your role as their employer? I'd refer you to the last couple paragraphs of Judge Tatel's majority opinion in Sealed Case, and what he explains there is that the question whether someone is an entity, is an agency, isn't a metaphysical inquiry. It depends on statutory definitions. So they have to find a statute that makes us part of the Department of Defense. Yeah, but what you're doing is you are not taking into account the common law agency relationship. So yes, if we didn't have any kind of relationship between you and DOD and we were just asking the question, are you an agency, I agree with you. But I guess Justice Kagan's point was we have some entity that everybody agrees is an agency under the statutes, and you are designated by Congress or required by Congress to step into their shoes for the purpose of administering this statute with respect to labor relations. So in that context, why aren't you the agency? So those common law principles help us and not them, which is why they don't cite them. Principle is bound by the actions of its agent. Agent does not become the principle by serving as the agent. They need to show that we are part of the Department of Defense, and acting as the agent of the Department of Defense doesn't make you the Department of Defense. Just as a military contractor who works for the Department of Defense is not part of the Department of Defense. So you're saying that I understood that the principle, as you say, is bound by the activity of the agent. So in this case, let's say you agreed that you would collectively bargain on behalf of DOD, and you made certain concessions. Are you saying that DOD would not be bound by those in terms of its understanding of the labor relationship that you created? The Department of Defense may be bound by what we do.  What you did across the bargaining table, they would be bound by it. Those employees couldn't say there's some other labor thing happening if you had made representations at the collective bargaining table. You would bind DOD. Is that right? As long as we were acting as their agent, which they say we are, yes. Okay. So why, I'm sorry, why doesn't that make you then responsible for sitting across from these employees in the context of the collective bargaining relationship as Congress understood it? Because that's, I guess it might, but the question that we're asking is, are we an agency? That's the only question in this case. We have to be an agency or the authority does not have the ability to issue orders to us. That's conceded. I don't think anyone's disputing that. And we don't become an agency by being the agent. And indeed, every federal employee is an agent of the federal government. We don't say they're all agencies. Thank you, counsel. Ms. Reese. Mr. Chief Justice, and may it please the Court, petitioners are required to comply with the Act and submit to the FLRA's orders in cases like this one because of the role they play in the federal employment system. It is uncontested that dual-status technicians have collective bargaining rights because they are federal civilian employees who are employed by parts of DOD, a covered agency. And under Section 709, D of Title 32, petitioners employ and administer technicians pursuant to a designation of federal authority from DOD. Other provisions confirm that role. For example, Section 2105 of Title 5 provides that an adjutant general appoints technicians into the federal civil service when he hires them. Adjutants general thus only hire, fire, and supervise employees of DOD because they are acting as if they are a part of and on behalf of that agency. Similarly, as petitioners seem to concede in their reply, as multiple provisions in the Act indicate, the Act requires compliance by components and entities that are designated to act on an agency's behalf. And that is exactly how petitioners behave when employing technicians. Petitioners, therefore, must both bargain with technicians and comply with the FLRA's orders. And if accepted, petitioners' arguments would upend 50 years of uninterrupted collective bargaining between technicians and state adjutants general. In a late-breaking argument, petitioners suggest that they may be required to bargain under the Act so long as DOD, instead of the FLRA, enforces any order issued against them. But that would not vindicate the right that the Act actually gives to technicians, a right to bargain with their direct supervisors, subject to the FLRA's enforcement authority. And it makes no sense to require DOD to threaten the nuclear option of withholding federal funding or recognition to state national guards to enforce routine FLRA orders. Because petitioners have decided to accept the benefits that come with employing technicians, they must also accept the limited bargaining obligations that come along with those benefits. I welcome the Court's questions. As I hear, Petitioner, the argument is that, of course, we are delegated this authority to hire the technicians and to supervise them. But that does not convert us into an agency for the purposes of the relevant statute. How do you respond to that? The term agency in the statute includes and requires compliance by components and entities that are designated to act on behalf of that agency. And that includes sub-components within a federal agency. And that's the thing that petitioners are most analogous to in this system that Section 709D and Section 709E have set forward. It's hard to imagine how someone can fully employ federal employees from the perspective of their being able to hire, fire, and supervise federal employees' day-to-day employment activities without holding that they are, in fact, acting as a component of an agency that's required to bargain. Well, there's always delegations from the head of agencies to subparts. But the delegees are not converted to agencies. They may be agents for a limited purpose. They may have limited authority that's delegated from the top, but they're not converted to an agency. And I think that's the leap that I'm having some difficulty with. So I think it would be helpful if I could maybe go through a few sets of provisions in the Federal Service Labor Management Relations Act that do indicate that the actual bargaining requirement often lies with a component of a federal agency, which I think helps bridge that gap to them seeing that petitioners are like that component. So the first set of provisions are the definition of collective bargaining and the definition of appropriate unit. Those are on page 3A and 5A of our statutory appendix. And those indicate that bargaining is often done not on a high-level agency basis, but on an agency plan installation, functional, or other basis. Now, the second set of statutory provisions that I think is helpful are the exclusions from the definition of agency. Those are on page 3A of the statutory appendix. And that excludes entities like the FBI and the Secret Service. And if we were to accept this proposition that only the high-level agency is required to comply with the Act and collectively bargain, there would have been no need for Congress to exclude the FBI and the Secret Service because they aren't high-level agencies. The FBI is part of DOJ. The Secret Service is part of the Department of Homeland Security. I suppose what they would say is, well, we get you as to the parts of agencies, and the parts of agencies aren't listed either, but we just assume that by saying the Department of Justice, we naturally mean as well the FBI, but we don't usually mean Ohio. And so that's the difference. So what gets you to Ohio? What gets us to Ohio is Section 709D and E and the designation of federal authority. And this isn't just a partial designation. It is a designation to hire, fire, and control the day-to-day employment obligations of dual-status technicians. That's where I want to pick up. So I'm just curious about the federalism implications of this case. Forget about the militia for the moment, okay? Under the spending clause today, the federal government effectively employs or provides the budgets for 30% to 40% of state budgets today, and many, many, many of their employees. Are they now, in other cases, Medicare, Medicaid, the examples that Justice Barrett offered, are they now agents of the federal government effectively? Are they effectively federal agencies? No, because in that, merely providing federal funding is not the same as providing a designation of federal authority to hire, fire, and supervise employment. Let's say Congress provides those similar kinds of provisions in those other areas. We allow the states to hire and fire the employees that we are funding, but it has to do whatever we say. You know, we are now a federal agency. I know you thought you were a sovereign state, but it turns out you are in fact a federal agency. So two responses to that. First of all, I think the hype set you just gave wouldn't convert them into federal employees. If they were in fact federal employees, not just federally funded, and then the state was given the authority to hire, fire, and supervise them in their day-to-day federal roles, I think that would look a lot like petitioners here. Okay, so in other words, there is nothing in this case that's particularly unique. Congress could replicate this, the same structure with respect to other spending clause programs. It could replicate it, but it is unique in that this is the only statute. 709D is the only one that either we or petitioners have been able to identify where a state employee supervises, hires, and fires federal employees into a federal role. Now, I know we don't have a constitutional commandeering-type claim here, but is there some concern the government has about converting state militia officers into federal agencies? A couple of responses to that. I'm just sure this is something you all have thought about too, so I'm curious. Absolutely. So I don't think this case in any way implicates militia concerns, because as this court recognized in Babcock, dual status technicians really do have three separate roles. And one of those roles is a federal military role, one is a state military role, and one is a federal civil service role. And that's the role that this case is about. And in fact, dual status technicians are barred by federal statute from collectively bargaining over the conditions of their state and federal military service or active duty training. And then, I'm sorry, just to circle back, is there any limit you see on Congress's power to replicate this scenario in other spending clause programs at all or none? I'm just curious. I don't think, I'm not aware of any limit. I think, obviously, this is a unique situation, and dual status technicians are, as this court recognized in Babcock, an extremely rare bird. Well, I understand that, but the government doesn't see any inhibition to Congress's power to turn states into federal agencies for purposes of whatever, whether it's collective bargaining or whatever other good interest it has in mind. Just two responses to that. First of all, I think there's an important component of this, the state consent. Petitioners have agreed that they've consented to this system, and I think if there wasn't that consent and if they didn't have the ability to cease hiring and firing dual status technicians, that would be a different situation, but to the extent that there was a consensual role and that Congress actually wanted to make a bunch of state employees federal employees and create state entities to be federal employers of them, I think that would look a lot like this, and I don't see any distinction. Beyond consent, do you see any other limits? No, not that I'm aware of right now. Ms. Reeves, why are you going so far? I'm just curious. This is a unique situation in and of itself because it's a military setting, and the militia per the Constitution is intimately tied between Congress and the states, correct? That's correct. I might have a problem with the anti-commandeering if we forced, even under the spending clause, states to hire particular people, utilize them, or collectively bargain on their behalf. That really is a different issue than what's involved in the military setting, isn't it? Well, a couple of responses to that. I don't think the distinguishing feature of this case is the military setting. The basis for these provisions is not the militia clauses, but it's the executive's ability to oversee executive branch employees. All right, fair enough. Now, the definition of an executive department, an agency, in Section 105 is used throughout Title V. Going back to the question that Justice Barrett asked, do we need to worry if we adopt your broad definition of agency or unit or component that we will be causing unforeseen issues for other provisions? No, you do not, and that's because our argument is heavily grounded on Section 709D and Section 709E, and those are unique provisions that there's no analog to anywhere else in the U.S. Code. And to the extent that... So your component argument seems to follow the arguments of the MECI, American Federation of Labor and Congress of Industrial Organizations. They were talking about the National Guards being a unit or a component of DOD. And I guess the counter to that argument is that Section 101.05 refers to federally recognized units and organizations of the Army National Guard. How could these state National Guards be federally recognized units or components? So we're not relying on the federal components or units argument, because as we envision this case, petitioners are acting in a federal civilian employment role when they're employing dual-status technicians. They aren't acting in their federal military role in any way. So I don't think that the right way to analyze this case is the way that those in MECI analyze it. I think the correct way to analyze it is to recognize that dual-status technicians have collective bargaining rights and then ask, who are those rights against and what do the entities in this case look like as far as the acts provisions go? And petitioners here look the most like a component or representative of an agency who's exercising that agency's authority in hiring, firing, and supervising the day-to-day activities of federal civilians. Isn't it odd to say that an entity is a component of the federal government for some purposes but not a component of the federal government for other purposes? I don't think so, because I think that the act itself is what provides the definition of an indication of what is a component. Those two provisions I listed in response to Justice Thomas' question, and also there's a third set of provisions. There's exclusions that the president can make to collective bargaining under the act. That's in Section 7103B of the act. And the president can remove subcomponents of agencies from the act. So I actually think that in the context of the act that's at issue here, it's clear that components have to comply, and that doesn't necessarily mean that's the case for other provisions throughout the federal code. Ms. Reeves, is there a distinction between... You're moving back and forth between kind of subagency, component, and representative. Is there any legal distinction between a subagency and a component and a representative? I guess I would have thought that representative was a stronger argument for you than component or subagency for the reasons that Justice Alito is saying. So I think that there... Representative can be a little bit of a broader meaning in some places in the act. Sometimes a representative can be just an individual who, for the purposes of bargaining, is going to the table for bargaining purposes. And when we're using the term representative here, we mean that a little bit more broadly. But I thought designate was a big part of your argument. And if you think of the adjutant general as a designee, that seems to me more like a representative than a component. So I think it's... I really think it's both. You know, there is some component of that could be seen as representative, but to the extent that adjutants general with very limited review have final say on hiring and firing federal employees, that really makes them look more like a component who similarly has kind of large discretion to hire and fire federal employees. Does anything turn on that distinction that Justice Barrett is pointing out? I mean, I thought that your argument was, let's figure out who is functioning as the employer for the purpose of this statute. And whether we, you know, call them, you know, component, the agency itself, representative or whatnot, nobody contests that this particular entity is performing those functions. And those are the kinds of things that are at the heart of collective bargaining. And as Justice Kagan says, someone has to be across the table if the rights that are being conferred have any power. I think that's right, Justice Jackson. And I think all of these things, the component arguments, the representative arguments, the agency arguments, all are trying to fit together these two statutory schemes and the clear rights that technicians have and this clear designation of federal authority. So, Ms. Reeves, as I understand General Flowers' argument, and I'm not sure I did until this argument, but he says he agrees that these employees have collective bargaining rights, he agrees that that means that somebody has to be across the table, but he says it's you that has to be across the table, the DOD. And, you know, by virtue of the definitional sections. And he says, you know, there's no requirement that you do this nationwide. You can just do it for Ohio. Now, I'm not sure why Ohio would want you to bargain for them, but apparently Ohio does. And I guess the question is, what would that scheme look like? So I do think it's important to think about what that scheme would look like. And first of all, you know, historically, the FLRA has certified bargaining units not at the nationwide level when it comes to the DOD. And that comes from the definition of appropriate unit in 7112A of the Act, which is on page 5A of the statutory appendix, that requires the agency to take into account a clear and identifiable community of interest. Historically, that hasn't meant a nationwide bargaining unit. Okay, so let's say for Ohio. So setting that aside, I think we have to think about the enforcement difficulties here. So what Ohio is proposing is that DOD bargains with state employees of state National Guard units. And then when Ohio refuses to comply with that, instead of the FLRA issuing them an order and it being subject to contempt, as is the ordinary case and has happened for the last nearly 50 years, DOD has to threaten to withhold federal funding or federal recognition to the state National Guard and state adjutant general. And respectfully, to my friend on the other side, I don't think that's any way to run a railroad. That has actual implications for the relationship between state National Guards and their federal components. There could be real national security risks. And if I could play this out just one more way, I think you further have to imagine, how could the FLRA try to enforce that against DOD? Could the FLRA hold DOD in contempt if it doesn't threaten to withhold all of the state National Guard's funding in order to enforce some minor FLRA order involving a single federal employee? I think the system the court should stick with is the system that's worked for the last 50 years. Thank you, counsel. What entity in the federal... Well, I can't say in the federal government. That's part of the question. I mean, what entity is most like the adjutant general here? I think for bargaining purposes, what's most... No, just in general. If you said this is the closest analog to the adjutant general. Probably be the secretary who's ever in charge of the Department of the Air Force or the Department of the Army. So full-time federal employee, officer of the United States, head of an agency as defined under law. Yes. That's nothing at all like what they are. Well, I think adjutant generals are very unique. They're the number one military commander in their state. And they primarily do act, you know, when they're not called into federal active duty service or when they're not supervising federal civilian employees. They do primarily act in a state role. But they have these other hats. No, no, I know. That's why I'm trying to find if there's anything remotely like them at all. I mean, I think the closest thing, if you're talking about the federal system, is the head of federal military departments. That would be the most analogous thing. But how are they remotely like it? I mean, nobody would say, well, let's try to figure out if you're a federal officer or a federal agency. Pretty clear they are. So you've got nothing that's remotely like them, I gather. I don't think so. They are really unique. I mean, I guess something that's analogous are individual members of state national guards. They also have to wear three hats. Yeah, but you never call them an agency. No, you wouldn't. There's agency Fred.  No, you would not. Okay. Justice Thomas? Anything further?  Justice Alito? Well, if the Adjutant General is like the Secretary of the Army, let's say that there are certain Army employees who have the right to bargain collectively. Presumably, the Secretary of Defense could order the Secretary of the Army to engage in that bargaining personally, couldn't he? So I think in that situation, and that was why I was trying to get at for what purposes the Chief Justice's question was asking for the comparison, for the purposes of bargaining comparison, DOD and civilian employees have bargaining rights. Let's set aside these state dual status technicians. So just normal federal civilian employees of DOD have bargaining rights. But they usually bargain not with the head of DOD. They bargain because their units are set at lower levels with the entity that controls their base. No, they don't normally do it. But is there any reason why the Secretary of Defense couldn't say to the Secretary of the Army, I want you to do it? Couldn't the President order that? I think two responses to that. First, yes, I think that that could be ordered. But second, I think if the bargaining unit is certified at a lower level, which is what matters for the purposes of bargaining before the FLRA, that person wouldn't be the appropriate person to be engaging in bargaining. But of course, the President could order that person to actually go and engage. Well, what I'm getting at is, if the Adjutant General is really a component of the Department of Defense, are there any limits on what the Secretary of Defense could order the Adjutant General to do in relation to collective bargaining? I don't think we've identified any limits. I think there are enforcement limits. If DOD were to instruct the Adjutant General to do something, the enforcement options that DOD would have would be pulling federal funding or federal recognition. They don't have the option to remove the Adjutant General from their state Adjutant General role, although they could remove him from his federal role. If they don't have the authority to order the removal of the Adjutant General, could the Adjutant General be ordered to do what was broached at one point in this case, and that is to apologize personally to these employees for violating their rights? I don't think that an order along those lines would be distinct from the other types of orders that we've suggested. If there was a valid basis for that order and that instruction, that instruction could come from DOD, but it would be limited to these enforcement options that DOD has. This is a very unusual scheme, and what you're asking for may have implications. Why isn't the best solution to this problem for Congress to step in and specify what is to be done in this situation, this arguably sui generis situation? I think Congress already has said what it meant here, and I think the Savings Clause is one indication of that. Fifty years of uninterrupted collective bargaining, I mean, seven circuits have come out this way, and Congress has amended the Technicians Act multiple times in those 50 years. And I think there's every reason to believe that as long as petitioners accept the benefits of dual-status technicians, which are free federal employees doing their day-to-day work, they have to accept the obligations that come along with that and have come along with it for the last 50 years. Do you think that the Savings Clause represents congressional adoption of every administrative decision, like the Thompson Field decision that was issued prior to that point? I think it does indicate adoption of a precedential decision, interpreting terms that are the same under the executive orders and the same under the Act, and that's what the Thompson Field decision is. How many such executive decisions or regulations would be covered by that? I'm not sure, Justice Alito. I'm not sure how many precedential decisions there were. Would it be a large number? I think it would be at least in the hundreds. And you think Congress surveyed all of those and said, we want to freeze all of those? I don't know what Congress was thinking, but I do know what Congress said in the text, and it was that such decisions would survive the Act's adoption. Justice Sotomayor? Well, Congress did have its attention drawn to the collective bargaining aspects of this when they were creating the carve-out. Correct? That's correct, yes. When Congress enacted Section 976, it was explicitly thinking about technician service. And it knew because it was told by the National Guards that they were required to collectively bargain and also to submit to federal agency supervision of that process, correct? Yes, that's correct. And they wanted out of it, and they didn't get it, correct? That's correct, Justice Sotomayor. Thank you. Ms. Kagan, Ms. Forsyth. Of what significance is DOD's approval of the collective bargaining agreement, if any? DOD's approval does indicate and confirm that DOD is the relevant agency for these purposes. I think it's also helpful because it does indicate that to the extent there are some sort of concerns that bargaining might be touching on military matters in violation of Section 976, DOD can reject the bargaining agreement outright. So some of the concerns that petitioners are raising about DOD being the right entity to deal with this can be done by DOD's review process. And I think the third relevance that that provision has is that it's yet another indication that it's often not the high-level agency or the entity at the very top of the agency who's responsible for the collective bargaining relationship and complying with the FLRA on a day-to-day basis. And Justice Gorsuch's questions about hypothetical schemes that would be similar in some respects to this, I think he asked about would there be any constitutional limits. I guess I would have thought there might be, but they're not an issue here and we don't have any constitutional issues in this case. I certainly agree with that, Justice Kavanaugh, and I took Justice Gorsuch's question to be a hypothetical. It's obviously not an issue in this case, and I think to the extent that some of the amici have raised commandeering problems, you know, petitioners have consented. That's very clear. And the second thing is petitioners are not administering a federal regulatory scheme. Petitioners are just complying with the federal law. Then two more. Third, on the role of the states, once Congress decides that these technicians are going to have collective bargaining rights, it seems to me more friendly to the state at that juncture to have them collectively bargain than to have the Assistant Secretary of Defense for Collective Bargaining, hypothetically, collectively bargain and force the state to comply with certain conditions without the state sitting across the table. I very much agree with that, Justice Kavanaugh. I think that not only is it no way to run a railroad to have DOD threaten to pull federal funding or federal recognition to enforce this, they're also not the ideal party because they don't supervise dual status technicians on a day-to-day basis, and they don't hire or fire them on a regular basis. Do you know if Congress was, anyone in Congress actually said anything like that? If you don't, that's fine. Yeah, that's fine. Yeah, I don't think anything in Congress. They did consider the collective bargaining issue, though, because that was raised as a concern by the state units, the state guard units in the 70s, as I understand. That's correct. When 976 was adopted, which was about a year from when the Reform Act itself was adopted, Congress really focused in on the technician issue itself, and there was initially legislation proposed that would have said that technician service is like active-duty military service and you can't bargain over it. And members of the military came before Congress and raised concerns that that would hurt relations between technicians and their immediate supervisors and also raised concerns that that would hurt military preparedness. And Congress just explicitly rejected that with the text of Section 976, which doesn't include technician service within the BARG service. One last one. I'm not aware of states coming to Congress to seek a change to this scheme recently, but you would know more than I about that. That's correct. There hasn't been anything recent. There was a cert petition, LIBSCM, that was filed I believe about a decade ago where a state raised this argument and the court denied that cert petition. I meant to Congress. Oh, to Congress, I'm sorry. I'm not aware of states raising this with Congress, no. Thank you. Justice Barrett? Ohio says that it would be impractical and even unlawful for it to comply with the collective bargaining order issued in this case and presumably in others as well, and you dispute that. Would you characterize it as an open question on which you have the better of the arguments, but there's a risk that Ohio would be right, or do you think Ohio is just crazy to say it? I think the latter. The general flower. I think the latter, Justice Barrett. I think the Sixth Circuit was correct. What I take petitioners to be complaining about is the portion of the order requiring them to reinstate union dues withholding, and what happened is that although DOD may be responsible for the withholding, the petitioners are responsible for having on hand and filing the forms necessary for that. So what petitioners did in this case is they filed forms canceling dues withholding on behalf of dual status signatures. They signed those forms, and that was something that was not permitted under the relevant statutes and regulatory provisions. So I think it's fair that the Sixth Circuit said to the extent that Ohio took that action, which was outside the law, that they can be required to correct that action. And I think in any event, though, that's really a sideshow in this case because petitioners haven't in any way suggested that they're unable to comply with the remainder of the FLRA's orders, and so to the extent there's some minor thing, though in the FACTS case you might think problematic, doesn't in any way undermine that generally there aren't a problem with FLRA orders. Well, I mean, I guess the reason why I ask is that you've pointed out the real practical problems that would arise if DOD was the one sitting on the other side of the bargaining table. And Ohio says, well, wait, wait, wait, wait, there are real practical problems and legal problems that arise if we're the one sitting on the bargaining table because then the FLRA issues orders that we actually can't carry out. And even if the Sixth Circuit was right about the order in this case on that particular issue, can you imagine other things? I mean, is Ohio right that there would be a practical problem whichever way you go? Because there might be a number of things that are controlled by DOD regulations that the Ohio adjutant general just can't control. I'm not aware of anything, and I actually think the onus is on Ohio here because we've spent 50 years collectively bargaining, and there are many court of appeals and FLRA decisions about this. Ohio hasn't been able to identify any difficulties or any sorts of things that they couldn't comply with in any of those other orders. Justice Jackson? So I just... I think I don't really see the federalism or commandeering concern, and I'm worried that it's because maybe I don't understand what it is that adjutant generals do or what the federal law is requiring. I thought that by virtue of this, they weren't subjecting themselves to federal authority for all purposes and that it wasn't that they were converting themselves into an agency, sort of writ large and general, and so all of the things that apply to agencies in the federal law somehow attach. I thought that the adjutant generals are only subject to the FLRA's authority when they're acting with that hat on, that is, the capacity to be the employer of this group of federal employees. Isn't there sort of like really a limited scope of FLRA authority being exerted here? If they're hiring state people or if they're supervising state people, the FLRA is not involved. It's just when this group of federal employees that everybody concedes are there are being supervised by this state officer. Therefore, must the state officer comply with the federal labor relations authority about collective bargaining? Am I right about that? That's absolutely correct, Justice Jackson. State adjutant generals don't have to collectively bargain over their federal or state military service of dual-status technicians, and they also don't have to bargain over anything that implicates or potentially implicates that from dual-status technicians' civilian federal service. That comes from Section 709F, so you're completely right. Thank you. Thank you, counsel. Mr. Grajales. Thank you, Mr. Chief Justice, and may it please the Court. A ruling in favor of the union here is not going to affect any other aspect of the petitioners, nor is it going to affect any other state entity. The scheme is completely unique for both technicians but also for the National Guard, and the authority for that is set forth in the militia clauses themselves and in the Technicians Act, and those are where we also find the limits on that authority. Ultimately, this is a policy disagreement that Ohio can take to Congress, but Congress, as it stands today, understood the matter to be settled. They understood Adjutants General and the State National Guards to be covered, and that is the Thompson Field decision, which was a definitive decision. The very first question that was answered in that case was whether the order in that case could be applied to the Adjutant General and the State National Guard. And we then have to look at the context, which is what 7135 requires, to see that that carried forward to the FLRA. I just want to get into one more thing, which is petitioners now concede A, that the civilian technicians are federal employees, B, that they have bargaining rights, and C, that the FLRA could certify units on a regional basis, which is what the FLRA has done, in essence, using its authority under 7112 of the statute. And they also fight against, they say they can do that, but they can't redress bargaining obligations. That has to be DOD. But really what they're saying is it's now just a question of degree. And that bargaining at DOD doesn't work for the reasons you've heard already, but it's inconsistent with the statutory scheme. And the one thing I want to point out is if bargaining were moved to DOD, it would render parts of the statute inoperative. Under 709D and 709E and 709F, the Technicians Act gives day-to-day supervision over working conditions and conditions of employment to the Ohio adjutant general. Under 7121 of the statute, a negotiated grievance procedure must have arbitration, and that arbitration must be binding. If the union goes to arbitration with DOD, but DOD can't issue an order to the adjutant general, that arbitration becomes advisory, and that is inconsistent with the statute. I'd be happy to take any questions. Well, you say it becomes advisory, but as... What is the limit under your theory as to what the Department of Defense can order the State National Guard to do? Well, the outer limit is unclear, but what we can say is that if they can't... Under 709F and 709D, the adjutant general has authority to suspend, to discharge, to do any number of things that directly affect technicians' civilian aspects of employment. If the statute leaves that to the adjutant general, then that poses a problem with the authority of DOD to issue an order. And if we go to arbitration with DOD, we say the union gets a favorable arbitration award on a suspension, and an arbitrator says that five-day suspension that was based on a civilian incident should be overturned and should be rescinded and taken out of a technician's record. Well, I guess with concerns, and maybe my perception of it's wrong, but my concern, the adjutant general is being treated as an agency. The idea is you can't be treated as half an agency, and if they're treated as all an agency, their character as a state entity is essentially gone. We would not agree with that. This is a very unique and very limited scenario where they're acting as a federal actor. They're wielding federal power. They're supervising federal employees. So they're not acting with their state hat on. I'm sorry. Thank you. I'm trying to look at what the board did below and what the state agency guard was arguing. Below, I'm not sure why they're collecting the forms that say deduct my union dues, because I thought it was the federal government who paid the dual citizen's salary. So that just strengthens our argument that the scheme as it stands today, it ain't broke. What it demonstrates is how the Technician's Act operates in conformity, or how the statute operates in conformity with the Technician's Act. And how it works in practice is those forms are given to the guard, and then they are processed, and then the dues are, through DOD, and the dues are actually withheld. By DOD. By DOD. But the only thing is that the guard collects the form for the government. That has always been the case. And to that point... Now, they also tried, from what I understand, they probably take umbrage at me calling this, they tried to union bust because they said they were no longer going to collectively bargain over certain terms of employment, correct? That's correct. And what the agency then said is, uh-uh, that's part of collective bargaining. Those are terms that have to be, were, and should continue to be collectively bargained.  That's... Yeah, I understand the question. What they repudiated, the FLRA found they were required to bargain over, and they were required to abide by mandatory terms of the collective bargaining agreement. So they were basically saying to the Department of the Army yes, we're giving you the opportunity to hire our employees, but you have to collectively bargain with them. And they were saying, eh, I don't really want to, so I won't. I'm going to keep them, I'm going to employ them, I'm not going to pay them, but I'm not going to do what I promised to do when I took them. I'm not going to collectively bargain with them. Yes, and that's a function of the designation, again, to go back to that. That's the answer here, is the Technicians Act. The Technicians Act creates a split scheme, and it's part of the National Guard, and that was the choice that Congress made when it made these employees federal civilian employees. And Congress certainly knew that they were bargaining with adjutant generals. It's in the record. I mean, Thompson Field is, in and of itself, unique in that it was entered into the congressional record. So we don't really need to look to other decisions or other terms to determine what Congress intended here. I'm sorry, enter it into the record when? The congressional, the Thompson Field decision was entered into the congressional record when Congress was considering and debating the ban on military unions in 976. It was deliberately put into the record, and there's a great deal of testimony, which we refer to in our brief, where not only is the Guard or representatives of the Guard complaining and asking to be relieved of their bargaining obligations under the executive order, union representatives are also explaining to Congress how that bargaining scheme works. I'm sorry to interrupt, but I just want to make sure I understand your argument to both of my colleagues here. So the Adjutant General of Ohio is a federal agency to the extent, sometimes, to the extent that he's dealing with dual-status technicians in their civilian capacity. That is our argument. However, I would limit it even further, which is... But he's not a federal agency for other purposes. Right. Only for this limited purpose of dealing with the civilian aspects of technicians' employment. Okay. And that... Now, when I turn to those definitions, and Section 105, USC 105, I think is what you pointed to, I don't see that kind of distinction, that there can be executive agencies sometimes, that they're evanescent, that they occasionally pop up and then they disappear. And the other thing I don't see is, in the definition of 105, it speaks of the executive departments from 101, but it doesn't mention 102, which are the military departments. What do we do about that? Well, the military departments, and we don't believe that's a question here, are, by their own, I think it's 10 USC 111. Yeah, 10 USC suggests they are, but... And it says that they are. Yeah, right, and 105 says they are in five USC. So what do I do about that? We have to read those together. We don't agree that 105 says they are not. No, it leaves that impression, though, because it includes 101, 103, 104, but it doesn't include 102, right? But it includes the Department of Defense. Right, but it doesn't... Which is an executive department. ...in 101, but the military departments in 102 are not included. I see the tension, I do, and I see your point that 10 USC should control over five USC. I'm just wondering why. Because it's the only way that it makes sense, is if you read those statutes together, Congress intended for the Department of Defense to be composed of Department of the Army and the Department of the Air Force, and which they become agencies through that mechanism. Thank you, counsel. Justice Thomas? Justice Lieber? Justice Gorsuch? Justice Barrett? Justice Jackson? Aren't... Just in response quickly to Justice Gorsuch's point with respect to 101 and 102, I thought that what was happening there was the fact that the Departments of Air Force and Army used to be outside of DOD. Congress brought them in, and then arrangements were made to make clear that they were now inside DOD. The military departments are a part of DOD right now. And there may be other statutes in which they are referenced separately, which is why you have 102, but... I confess and I apologize that I don't know the history, but I agree with the conclusion that that is what they did. Yes. Thank you. Thank you, counsel. Rebuttal, General Flowers? Thank you, Mr. Chief Justice. I have just one quick point and then two larger points. The quick point responds to Justice Alito's question about the single decision and what do we make of that. This Court and Department of Interior, the FLRA, looked at one of those decisions by the assistant secretary and it said basically one decision's worth virtually nothing. That's 526 U.S. at page 95. Now for the two bigger points. The first and the most fundamental is that I think what this argument shows, what the briefing shows, is that the only way you get the petitioners into the definitions here is to fight the text. There's just no way to get there. Now, the authority says you look to 709D and we're designees. That's true, but why does it matter? Why is a designee become an agency under Title V? And let's also keep in mind that the relevant definitions here, the Title V definitions, are not part of the Reform Act. The Reform Act incorporates them, but the Title V definitions apply throughout Title V. So there are questions about consequences. Think of the other entities that might qualify as agencies under their theory. This court in Maryland, the United States, said that state militias, even though they care for equipment on behalf of the government, do not thereby become the federal government. I think that may go out the window. What do we do with federal employees who are all agents of the federal government? Are they now federal agencies for purposes of Title V? What about the state actors who run our employment systems as agents of the federal government? Are they now federal agencies for purposes of Title V? I can't see why the answer would be no. So other than just an ad hoc decision that's good for this particular context in this particular case, there's just no way to read us into the act. And that brings me to my second good point. There's no reason to fight the text so hard. The Defense Department can handle this, and it's in fact better positioned to handle this. First, they have control over many of the issues with respect to which the technicians may wish to bargain and with respect to which the authority may wish to make orders. I think there was a suggestion that we might be crazy for saying that we would violate the law by reinstating dues. I might be crazy, but not for that reason. We would have to break into the federal computer system and reinstate the dues ourselves because we do not actually withhold the dues the federal government does. In addition to the control they have, there's no reason to think we're going to spar with the Department of Defense. That's just not the way it goes. We do follow National Bureau regulations. But then you might ask, I think Justice Kavanaugh asked this, well, why does Ohio care then? Why are you even here? Well, here's my answer, is that when we work through the Department of Defense or when the authority has to go against the Department of Defense, we have the Defense Department and the President as Commander-in-Chief as a buffer. And if they see what's going on and say, no, if you order that, it's going to interfere with the military interests of the United States. A, the FLRA is probably going to take that seriously when deciding what to order or what to request. And B, if somehow the authority does order the President to do something that is contrary to military interests, there may well be a situation where the President's in court saying you cannot command us to do that. You cannot make us withhold all the federal recognition or funding from the State Guards. So if there are no further questions, we simply ask that you reverse the Sixth Circuit. Thank you, Counsel. The case is submitted.